*Judgment reversed*
*and writ granted;*
*motion for attorney fees denied.*

MOYER, C.J., SWEENEY, HOLMES, WRIGHT, H. BROWN and RESNICK, JJ., concur.

DOUGLAS, J., concurs in judgment only.

THE STATE EX REL. ORBIT MOVERS & ERECTORS, INC., APPELLANT,
*v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Orbit Movers & Erectors, Inc.
v. Indus. Comm.* (1992), 65 Ohio St.3d 344.]

(No. 92-395—Submitted October 20, 1992—Decided December 14, 1992.)

*Thompson, Hine & Flory* and *Helen Mac Murray,* for appellant.

*Lee I. Fisher,* Attorney General, and *Scott A. Armour,* Assistant Attorney General, for appellee Industrial Commission.

*Butkovich, Schimpf, Schimpf & Ginocchio* and *J. Kent Breslin,* for appellee Bregenzer.

---

*Per Curiam.* Three questions are presented for our review:

(1) Whether Ohio Adm.Code 4121:1-3-20(D)(1) is applicable to the girt in question; (2) Whether there is "some evidence" to support the claimed violation; and (3) Whether claimant was negligent, thus precluding an award for a VSSR. For the reasons to follow, we affirm the judgment below.

The interpretation of specific safety requirements is within the commission's sound discretion. *State ex rel. Allied Wheel Products, Inc. v. Indus. Comm.* (1956), 166 Ohio St. 47, 1 O.O.2d 190, 139 N.E.2d 41. Being an employer penalty, however, specific safety requirements must be strictly construed. *State ex rel. Whitman v. Indus. Comm.* (1936), 131 Ohio St. 375, 6 O.O. 88, 3 N.E.2d 52. The relevant safety requirement before us provides:

"(1) During the final placing of solid web structural members, the load shall not be released from the hoisting line until the members are secured with no less than two bolts, or the equivalent, at each connection, and drawn up wrench tight." Ohio Adm.Code 4121:1-3-20(D)(1).

Appellant challenges the commission's determination that (1) the term "load" in the rule refers to "solid web structural members" and (2) the girt was such a member. Appellant argues that "load" refers to the steel siding

not yet hung. It reasons that the promulgators of the rule would have specified that "load" and "solid web structural member" are equivalent terms, had that been the intent of the authors of the rule.

Appellant's argument undercuts its own position. We find that had the authors intended to equate "load" and "siding," they would have said so. Moreover, unlike "structural member," the term "siding" does not even appear in Ohio Adm.Code 4121:1–3–20(D)(1). Finally, the subject of the entire specific safety requirement is solid web structural members, not siding. We thus find that even if the rule is strictly construed in appellant's favor, the commission did not abuse its discretion in finding that the term "load" refers to structural members.

Appellant alternately claims that the girt was not a *solid web* structural member. This argument also fails. Relying on the OSHA transcript that arose out of that agency's investigation of the accident, the staff hearing officer concluded that the girt was of solid web construction. Additionally, based on the testimony of appellant's own job-site supervisor, the staff hearing officer specifically found that appellant itself, at the time of the accident, treated the girt as a "structural member":

" * * * [T]he primary designed function of the girt(s) was to carry and support the steel siding that was to be used to enclose the building; and that the employer's job superintendent, upon being advised that the mounting holes were misaligned, *elected to treat the girt as a structural member* by refusing the foreman's request to burn new holes upon the grounds that 'we were not allowed to do any burning on *structural members* without a written permission from [*sic*] * * * Chevrolet engineering.' (OSHA transcript, page 346) Employer's contention that the girt was not a structural member is, therefore, found not to be well-taken and accordingly, it is found that the girt in question comes within the scope of OAC 4121:1–3–20(D)(1)." (Emphasis added.)

Accordingly, we conclude that Ohio Adm.Code 4121:1–3–20(D)(1) is applicable here.

We now proceed to our evidentiary review. It is beyond dispute that the girt was not bolted at both ends. Based on laboratory data, empirical evidence and OSHA testimony, the staff hearing officer found that the wire was not an adequate means of support:

"It is found that when the 751 lb. girt was erected in its place on or about June 26, 1980, it was discovered that the mounting holes therein failed to align with the holes on the vertical column, and that rather than lower the girt to the ground until authority to make the necessary alterations could be obtained, the employer elected to fasten one end with two ¾ inch bolts, and to

support the other end with a loop of # 12 wire (somewhat under ⅛ inch in diameter). * * * Employer has submitted laboratory evidence of tensile strength testing of three portions of # 12 wire whose results range from 428 lbs. to 481 lbs (and since two strands were involved, should have been adequate to support a minimum of 856 lbs., noting that only one half of the 751 lb. load—i.e., 375½ lbs.—needed to be supported); and that even the addition of the approximate weight of Claimant would still have resulted in a potential load of only 565½ lbs., well within the tensile strength of the wire tested. The Specific Safety Requirement, however, requires not a means adequate to support the members, but a means *equivalent* to the support provided by the two bolts. First, there is no testing laboratory evidence of the shearing stress limit of the bolts to establish that the tensile strength of the two strands of # 12 wire was its equivalent. Secondly, in actuality, on July 1, 1980, the two wires on one end failed to hold half the weight of the girt (and that of Claimant)—i.e., approximately 565½ lbs.—while the two ¾ inch bolts on the other end were able to hold the entire 751 lb. weight of the girt after the breaking of the wire. Such empirical evidence demonstrates that the two strands of the # 12 wire were not the equivalent of the two bolts. Thirdly, the employer testified unequivocally at the OSHA hearing that # 12 wire once around would not be as strong as two ¾ inch bolts (OSHA transcript, page 392). Accordingly, based upon the three elements discussed above, it is found that the use of a loop of # 12 wire was not the equivalent of two bolts. [Emphasis *sic.*]

" * * * [T]he OSHA testimony of Mr. Ralph Cannon, [stated] that the commonly accepted alternatives to bolting are the use of wire ropes ranging from ⅜ to ½ inch in diameter * * *. Finally, there is no persuasive evidence to indicate that there existed practical difficulty preventing Employer from complying with the specific safety requirement, or that complying with it during the approximately one week period between the placing of the girt and the accident would have caused unnecessary hardship to the employer. Accordingly[,] a violation of OAC 4121:1–3–20(D)(1) is found."

We thus find that "some evidence"—as required by *State ex rel. Burley v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936—supports the commission's finding of noncompliance with Ohio Adm.Code 4121:1–3–20(D)(1).

Appellant lastly alleges that claimant did not secure his safety belt and was on the girt against orders. These acts, appellant concludes, constitute claimant negligence and preclude an award for a VSSR. We disagree, finding appellant's allegations of claimant negligence to be unfounded.

Based on claimant's statement and portions of the OSHA transcript, the staff hearing officer found that the accident happened while claimant was moving across the girts. Being mobile, claimant could not have secured his lanyard absent a safety line, which appellant did not provide. Claimant's failure to secure himself was unavoidable, not deliberate.

Appellant's assertion that claimant was told to avoid the suspended girt is also not supported by appellant's cited evidence. Contrary to appellant's representation, the affidavit of Monta Flannery, field superintendent for the project, does not indicate that claimant was directed to avoid the girt. Other cited testimony was by appellant's president who admittedly was not on the job site on the day in question. Nor does the report of appellant's supervisor of safety clearly indicate that claimant was instructed to stay off the girt that day. We thus reject appellant's allegation of claimant negligence.

Accordingly, the judgment of the court of appeals denying the writ is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.